## LAMPREY *v.* BATCHELDER.

Where, on a division of a town in 1742, it was provided that lands should be taxed in the town where the owner lived, but that land purchased by strangers should be taxed in the town where it is situate—*held*, that the provision was in its nature temporary, so far as respects the taxation in the town where the owner lived, and that the term "strangers," used in the act, applied to such as were not land-owners at the time of the division, but became such by subsequent purchase, and that in those cases the lands should be taxed in the town where they were situate.

Whether the rule would be the same if the lands had come down to the present owner by an unbroken line of descent, *quære*.

THIS is an action on the case, brought by the plaintiff, who is an inhabitant of Hampton, in said county, against the defendants, who were selectmen of North-Hampton, in said county, for the year 1859, for an alleged illegal assessment of taxes for that year upon four tracts of land in said North-Hampton, owned by the plaintiff, and taxed as non-resident lands.

The town of North-Hampton was formerly a part of the town of Hampton, and so remained until the year 1742, when, by an act of the General Assembly of the then Province of New-Hampshire, the northerly part of said Hampton was set off by metes and bounds, as a new town or parish, as then called, by the name of North-Hampton; since which time the said town of North-Hampton have exercised separate and independent corporate and municipal powers, without any further act of the legislature specially enacted for the purpose.

In said act of incorporation is the following clause:

" That such estates as lye in the old parish, which belong unto and are owned by persons who live in the north parish, shall be rated to the north parish, and such estates as lye in the north parish, which belong unto and are owned by persons who live in the old parish, shall be rated to the old parish; and that on which side soever of the said line any person shall live in Hampton aforesaid, there he and his estate, on both sides of the said line, shall be rated; and that if any stranger shall purchase land in either of the said parishes, such stranger shall be rated for such land where it lyeth; and that the grant made to Mrs. Dorothy Gookin shall be paid by each parish, in proportion as usual; and that the selectmen of each parish shall join in making province taxes, and both parishes shall join in the choice of representatives, until further orders; and that the rates for the present year shall be paid as they are already made; and that the officers of the said north parish shall be and remain the same that they now are, as chosen by virtue of an act made in the twelfth year of his present Majestie's reign, entitled an act to excuse sundry persons who live in the northerly part of Hampton, in the province of New-Hampshire, from paying to the support of the ministry, &c., in the old town of Hampton aforesaid, until others shall be chosen in their room and stead."

Both towns, from 1742 to 1858, in assessing taxes, acted in accordance with the provisions of that clause; and said four tracts of land, so far as is known, were uniformly taxed in and by the town of Hampton, and the taxes thereon paid by the owners thereof to said Hampton, and were so taxed and the taxes paid in the year 1859, and the same were never taxed in or by said town of North-Hampton until the year 1858. The town of Hampton have never consented to the taxation of said lands, or any other lands similarly situated, by the town of North-Hampton, but objected thereto, and now claim the right to tax such lands, in accordance with the provisions of said act, and the uniform practice of both towns until the year 1858. The town of North-Hampton, in 1858 and since, have not taxed lands in Hampton belonging to citizens of North-Hampton, and have claimed the right to tax in North-Hampton all lands in that town, under the general law of the State, whether owned by citizens of Hampton or others. In 1858 they taxed said lands as non-resident, but for some cause did not enforce the collection of the tax against the owners of said land in Hampton. In 1859, prior to April, the selectmen of North-Hampton notified the selectmen of Hampton that they should tax all lands lying in North-Hampton which were owned by citizens of Hampton, and did tax them accordingly.

By the records of North-Hampton it appears that on the 8th day of May, 1778, a warrant for a town meeting was issued by the selectmen for a meeting on the 25th of the same month, the fourth article of which was, "To see what method the parish will take concerning the land lying in said parish, belonging to non-residents that do not pay taxes in said parish." At the meeting held under this warrant it appears that the following vote was passed: "Agreed to choose three men as committee, to put in a petition to the General Court, to see whether all the lands

belonging to Rye and Hampton, lying in this parish, shall not be taxed in this parish."

A petition was presented to the General Court by said North-Hampton, praying to be relieved from the provision of the clause before mentioned in said act, but the House of Representatives, after notice and hearing, on October 27, 1779, voted not to grant the prayer of said petition, and ordered that it be dismissed.

The plaintiff is a native of said Hampton, and has always lived therein, and the said four tracts of land belonged to his ancestors in 1742, and have been owned by the family since to the present time.

The defendants, as selectmen of North-Hampton, in the month of April, 1859, assessed upon said four tracts of lands, as non-resident lands, the taxes ordinarily assessed by towns for State, county, town, school and highway taxes, and also a school-house tax for the purpose of building a school-house in the school district in which said lands were situate, which, upon the four tracts, amounted to $34.88. The taxes thus assessed upon said lands were delivered by the defendants on April 18, 1859, to John S. Hobbs, the collector of taxes for said North-Hampton for that year, with a warrant under their hands and seal, directed to him, and requiring him to collect said taxes, and, if the same were not paid, to sell at public auction so much of said lands respectively as would pay said taxes, with incidental charges; and the said Hobbs, by virtue of said warrant, on December 10, 1859, sold at public auction the said tracts of land to pay said taxes, with incidental charges, at separate sums for each tract, amounting in all to $50.67; the fees, charges and expenses of said sale being on No. 1, $2.21, on No. 2, $2.28, on No. 3, $11.07, and on No. 4, $1.48. The collector sold a large number of other lots of non-resident lands at the same time, and he apportioned or divided his fees, charges

and expenses among the several lots in proportion to their value, and not equally among the lots.

The plaintiff, in order to redeem said lands from said sales, on February 23, 1860, paid to Hobbs, under protest, the said sum of $50.67, and interest thereon, at twelve per cent, from December 10, 1859, being $1.23, amounting in the whole to $51.90; and this action is brought to recover damages for the assessment of said taxes and the sale of said lands as aforesaid. It was agreed that judgment should be rendered in the action according to the opinion of the court upon the foregoing case.

*W. W. Stickney,* for the plaintiff, contended that North-Hampton had no right to tax the lands in question, because it was contrary to their charter, and the usage and practice of both towns for over a century; that the legislature had the right so to provide in the charter (*Bristol* v. *New-Chester,* 3 N. H. 524; *Londonderry* v. *Derry,* 8 N. H. 320; *Berlin* v. *Gorham,* 34 N. H. 266); that the general laws passed since 1742, providing for the taxation of lands in the towns where situated, did not repeal the provisions of the charter, because, first, Hampton and its residents owning lands in North-Hampton had acquired vested rights which the legislature could not repeal (*New-Jersey* v. *Wilson,* 7 Cranch 164; *Hardy* v. *Waltham,* 7 Pick. 108; *Capen* v. *Glover,* 4 Mass. 305); and second, such repeal, not being express, is not to be implied (*Nichols* v. *Bertram,* 3 Pick. 442; *Vinton* v. *Welsh,* 9 Pick. 87; *Birkenhead Docks* v. *Birkenhead Dock Co.,* 23 E. C. L.; *Oltanea* v. *La Salle,* 12 Ill. 339; *McFarland* v. *State Bank,* 4 Pike 410; 5 U. S. Dig. 811, 98, 99; Bac. Abr., Statute, D, 18, I. 39; *Snell* v. *Bridgewater Manf. Co.,* 24 Pick. 296; *Goddard* v. *Boston,* 20 Pick. 407; *Haines* v. *Jenks,* 2 Pick. 172; *Pease* v. *Whitney,* 5 Mass. 380; *Capen* v. *Glover,* 4 Mass. 305; *Tyson* v. *Postlethwaite,* 13 Ill. 727; *Williams* v. *Pritchard,* 4 T. R. 2); that a proper construction of the general laws passed since

Lamprey v. Batchelder.

1742 would not repeal the provisions of the charter in question, they being mere revisions or reënactments of the statutes then in force (Province Laws of 1761, pp. 33, 191; *Crowell* v. *Clough*, 23 N. H. 210; *Burnham* v. *Stevens*, 33 N. H. 256; *Tomson* v. *Ward*, 1 N. H. 12; *Titcomb* v. *Union Ins. Co.*, 8 Mass. 326); and that the true construction of the statute was proved by the contemporaneous and long continued construction put upon it by the parties interested (*Rogers* v. *Goodwin*, 2 Mass. 475; *Packard* v. *Richardson*, 17 Mass. 144; *Opinion of Justices*, 3 Pick. 517; *Capen* v. *Glover*, 4 Mass. 305; *Bosworth* v. *Ripley*, 17 Pick. 349; *Williams* v. *Raynham*, 17 Pick. 349; *Graham's Appeal*, 1 Dall. 136; *Chesnut* v. *Shaw*, 16 Ohio 599; *McKeer* v. *Delaney*, 5 Cranch 22; *Morrison* v. *Barksdale*, Harper 101; Constitution of New-Hampshire, art. 90; *State* v. *Rollins*, 8 N. H. 563). He also contended that the collector should have apportioned his fees and charges of sale equally among the lots, and not in proportion to their value. Comp. Stat., ch. 130, sec. 20.

*Amos Tuck*, for the defendants, cited, to the point that the charter of 1742 was subject to modification or repeal (Ang. & Am. on Corp., sec. 31; *Bristol* v. *New-Chester*, 3 N. H. 532; *East-Hartford* v. *Hartford Bridge Co.*, 10 How. 511; *McKim* v. *Odin*, 3 Bland (Md.) 417; *Sloan* v. *State*, 8 Blackf. 364; *People* v. *Wren*, 4 Scam. 269); and contended that such modification resulted from the act of 1833, if not by earlier enactment (citing Sedgwick on Statutes 382), and that such modification was not affected by the erroneous action of the selectmen (citing *Brown* v. *County Commissioners*, 21 Penn. 42); also, that the fees and charges of sale were rightly apportioned.

BELLOWS, J. This is an action on the case, for an illegal assessment of the plaintiff's lands in North-Hampton, and the action must turn upon the question whether the la

of the provincial legislature, passed in 1742, providing for the taxation of such lands in Hampton, was in force in 1859, when this assessment was made.

At the time this law was passed, the tract of land now North-Hampton was severed from Hampton and made a new town, and, in the act of division, a provision was made for taxing lands to the owners in the town where they lived, if in either of the two, whether the lands were situate in the same town or not, and enacting that, on which side soever of the dividing line any person shall live, there he and his estate on both sides shall be rated, and further providing, that if a stranger should purchase land in either town, it should be taxed to him in the town where it was situate. The act also further provided that, for convenience in assessing the taxes in this manner, the selectmen of each town shall join in making the province taxes, and that both towns shall join in the choice of representatives until further orders.

Taking all these provisions together, it is quite apparent that the provincial legislature had no purpose to trench so far upon the established rules of taxation as to provide for a permanent taxation of lands in the town where the owner might live, but rather to adapt the provision of the dividing act, so far as it might be, to the convenience of the present land-owners, some of whom, doubtless, owned land in both towns, and probably on each side and adjoining the division line.

In respect to strangers—and by that term may probably be understood those who were not then land-owners in either town—they were not to be included within these peculiar provisions, but to be taxed under the general law for such lands as they might purchase in either town.

Whether the plaintiff is to be regarded as a stranger, purchasing land in the new town since the division, in the sense of the act, is the question. It may be safely assumed that he did not own the land at the time of the division,

Lamprey *v.* Batchelder.

but he may, nevertheless, have acquired it by descent and not by purchase, and therefore, strictly speaking, in the sense of the act, not a stranger who purchased since the division. If the plaintiff's title did not come to him by an unbroken line of descent, from one who was owner at the time the new town was made, we should be inclined to hold that, by a fair construction of the law, his lands should be taxed in North-Hampton, and we are not prepared to say that such unbroken descent would affect the result, if shown to exist.

The anomalous and inconvenient character of the provision, calling for the joint action of the selectmen of both towns, and the fact that it was so great a departure from the established policy of the then provincial legislature, would incline the court to avoid a construction that would extend its operation beyond the temporary purpose which was designed, unless such a construction was imperatively required. But as the case does not set forth such unbroken line of descent, it is not necessary to decide that question at this time.

Taking the language of the whole act into consideration, we are satisfied that the object of this provision was temporary, and intended for the convenience of the existing land-owners, at whose instance the division was effected; and as the plaintiff, in the case before us, stands as a stranger within the meaning of the act, there must be

*Judgment for the defendants.*